## HAMMOND *v.* OLMSTEAD BROS.

*(Circuit Court, D. Connecticut. February 16. 1882.)*

1. AGENCY—ACCOUNTING WITH PRINCIPAL.

   Where in an accounting with the principal an agent sells the property of his principal under instructions, at various dates, upon a fluctuating market, the subsequently placing all the sales as of one date is improper, and he will be liable to his principal for the balance between what he received and what he accounted for.

SHIPMAN, D. J. This is an action at law, which, by written stipulation of the parties waiving a trial by jury, was tried by the court. The facts which are found to be true are as follows:

On August 11, 1879, the plaintiff owned two cribs of unshelled corn in the town of Dunlap and state of Iowa. The defendants were his agents for the purchase and sale of the corn. They were authorized by letter of August 11, 1879, upon certain conditions not material to the present case, to sell 10,000

bushels for 34 cents or more per bushel, and to sell the balance for 37 cents or more. On September 6, 1879, they sold, through S. H. McCrea & Co., of Chicago, 10,000 bushels at 34⅛ cents per bushel, to be delivered in October.

On August 25th the plaintiff, fearing that one of the cribs was weak and might fall, instructed the defendants to sell what could not be made safe. On August 28th he telegraphed them to "hold on if you have not sold." By letter of the same date he wrote that he concluded to wait until he had heard more definitely the condition of the cribs. On September 5th he wrote them to sell the weak crib, with no restrictions as to price, and "the balance hold till we know how the new crop comes in, or touches 34, when sell up to 10,000." It is evident that the latter part of this restriction had reference only to 10,000 bushels. It was not intended to alter the directions which had been previously given as to the residue of the corn. If the price should touch 37, (which was then considered very doubtful,) they were authorized to sell. The sale of September 6th was satisfactory to the plaintiff.

On September 20, 1879, the defendants sold, through S. H. McCrea & Co., 15,000 bushels at 37¼ cents per bushel, to be delivered in October, and the same day telegraphed the plaintiff that they had sold 10,000 bushels at the price above named.

The plaintiff had purchased and put into the cribs, in the winter of 1878-9, what was estimated at 26,165 bushels. Corn always shrinks somewhat in drying, and some is taken by cattle, or stolen from the cribs, so that a shrinkage is expected when it is shelled. On September 26, 1879, the defendants commenced shelling the plaintiff's corn, and in due time it was shipped to Chicago.

On October 17, 1879, corn was rising in price, and the plaintiff, supposing that about 6,000 bushels were unsold, telegraphed the defendants to "let McCrea handle the balance of the corn on this market, and hold and sell on break," to which telegram the defendants replied in the following letter, dated October 18, 1879.

"Your telegram was received last evening, asking us to let McCrea handle the balance of the corn on this market, and hold and sell on break. We answered you by red message that we can't get cars fast enough to fill sale, but will ship as fast as possible. We (in common with all other shippers) have been terribly troubled about the shortage and scarcity of cars. The railroad seems to be doing so much business that we only get about two or three cars when we want six, and so we dare not sell the balance of your corn in a round lot because the chances are we wouldn't be able to fill it without loss to you; but we will continue to ship as fast as possible, and we think you will get the balance in on these good prices. Sorry we sold quite so soon, but no one dreamed of such an advance. Will send you check for $1,600 as soon as we get account sales as you requested."

Other letters passed from defendants to plaintiff of no especial importance to the present issue. A letter of October 22d did not tend to change the plaintiff's understanding in regard to the sale of September 20th, but would naturally have the contrary tendency.

On December 5, 1879, and on January 13, 1880, the plaintiff was in Dunlap, and was told by the defendants that his corn amounted to 24,492.30 bushels, and that the sale of September 20th was of 15,000 instead of 10,000 bushels, and

that they supposed that they had so informed him by telegraph. The defendants have not been in the habit of selling their own corn for future delivery. They usually cribbed a small crib, and also purchased, in the summer, corn which they were in the habit of sending to McCrea & Co., to be sold as it arrived. Corn sold at the market rate, to be delivered in the future, is always sold in lots of 5,000 bushels, or multiples of 5,000. If smaller lots are sold for future delivery there must be a discount from the market rates. In 1878-9 the defendants had a crib of about 3,000 bushels. They sold corn to McCrea & Co. in September, October, and November, 1879, in addition to the 25,000 bushels upon future delivery, as follows:

| | | | | | |
|---|---|---|---|---|---|
| Sept. 10 | 1,354.06 | bushels | at | $33\frac{1}{4}$ | cents. |
| " 11 | 427.08 | " | " | $33\frac{1}{2}$ | " |
| Oct. 13 | 381.34 | " | " | $37\frac{1}{8}$ | " |
| " 17 | 523.12 | " | " | 39 | " |
| " 22 | 945.10 | " | " | $46\frac{3}{4}$ | " |
| " 23 | 947.08 | " | " | $45\frac{1}{4}$ | " |
| " 25 | 1,440.20 | " | " | $45\frac{3}{4}$ | " |
| " 28 | 944.46 | " | " | 42 | " |
| " 29 | 992.38 | " | " | 41 | " |
| " 31 | 415.20 | " | " | $41\frac{3}{4}$ | " |
| Nov. 3 | 395.10 | " | " | $42\frac{3}{4}$ | " |
| " 11 | 484.46 | " | " | $42\frac{1}{2}$ | " |

In the winter of 1879-80 the defendant bought a new lot of unshelled corn for the plaintiff, so that, crediting him at the rate of $37\frac{1}{8}$ cents for 14,492 bushels, he owed then $79, which he paid.

There is no dispute in regard to the sale of 10,000 bushels at $34\frac{1}{8}$ cents on September 6th.

This suit is brought to recover from the defendants the amount which the plaintff claims they received for his corn in excess of $37\frac{1}{8}$ cents per bushel for 14,492 bushels, or damages for breach of contract.

The plaintiff claims damages because his corn would have amounted to more than 14,492 bushels had the defendants exercised the care required by the contract. He claims that there was or should have been an excess above $37\frac{1}{8}$ cents, because the defendants violated their instructions in selling at that sum, and did not send the balance to McCrea for sale, but sold it themselves from time to time; and, lastly, if no instructions were violated, they sold but 10,000 bushels at $37\frac{1}{8}$, and the residue at a greater sum.

The first two positions are untenable. The plaintiff's case must rest entirely upon the third point. If 15,000 bushels of the plaintiff's corn were sold on September 20th, it was a sale in pursuance of existing restrictions.

It is clear that the defendants sold on September 20th 15,000 bush-

els to be delivered in October, and that they telegraphed the plaintiff that they had sold 10,000 bushels. They say that when they learned in January, 1880, that their telegram was for 10,000 it was a great surprise. That the mistake was caused by the hurry and press of business; that it was not their custom to sell for future delivery; that on September 20th they had not 5,000 bushels on hand, and that they would not undertake to sell what they did not have; and, in brief, that the information which the telegram gave was a mistake, while in fact the plaintiff's corn was sold and delivered under the contract of September 20th.

Were it not for the defendant's letter of October 18, 1879, I should think that this was the correct theory, and I should much prefer to adopt it. But unless they supposed, when they wrote on October 18th, that they had about 5,000 bushels of the plaintiff's corn, the letter is senseless.

They had bought 26,165 bushels. There is always a shrinkage from the purchased amount. They had sold, as they now say, 25,-000 bushels. Under the most favorable circumstances, considerably less than 1,000 bushels would remain. The plaintiff wrote to let McCrea handle the balance. They reply as though they had a large quantity on hand. "We can't get cars fast enough to fill sale, but will ship as fast as possible. * * * We dare not sell the balance of your corn in a round lump, because the chances are we wouldn't be able to fill it without loss to you." A "round lot" means a lot of 5,000 bushels. This letter shows, beyond dispute, that the writer thought, on October 18th, he had about 5,000 bushels of the plaintiff's corn to sell, and that he was intending to ship it from time to time, and let it take the chances of the market. The subsequent placing all the plaintiff's corn under the sale of September 20th was improper.

The defendants received for the plaintiff's corn $314.19 more than they credit him in the account, and he is entitled to recover said sum, with interest from December 5, 1879.

Let judgment be entered accordingly.